* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties of their representatives, the Full Commission upon reconsideration of the evidence affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following which were entered into by the parties in a Pre-Trial Agreement as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction over the parties and the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The Plaintiff was employed on the alleged date of injury.
4. The Plaintiff's average weekly wage is subject to Form 22 wage verification.
5. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times. An Employer/Employee relationship existed between the named Employee and the named Employer on the date of the injury.
6. The Defendant-Employer is insured by Zurich America Insurance Group.
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The Plaintiff was 58 years of age at the time of the hearing before the Deputy Commissioner and his date of birth is September 7, 1946.
2. The Plaintiff was employed as a fuel truck driver for Defendant-Employer for a period of approximately seven years. The Defendant-Employer is a general contracting firm that engages in heavy construction projects, including highway construction.
3. The Plaintiff was previously employed with the North Carolina Department of Correction as a transportation officer for a period of 26 years and 4 months. Plaintiff retired in 1996, after sustaining a 15% permanent partial disability rating to his back for a work-related injury. The Plaintiff also retired from the U.S. Army Reserves after completing 26 years of service.
4. The events leading up to the date of Plaintiff's alleged injury began on June 2, 2003. The Plaintiff reported to work at 5:00 a.m. on June 2, 2003, and began his work duties. He received a call from his supervisor, Andrew Hoyle, at approximately 11:00 a.m. requesting that he return to the company shop.
5. Upon arriving at the shop, Mr. Hoyle ordered Plaintiff to report to Concentra Medical Center (hereinafter, "Concentra") to submit to a routine, random drug screen.
6. Plaintiff complied with Mr. Hoyle's directive and immediately reported to Concentra for his drug screen.
7. Upon arriving at Concentra, Plaintiff encountered Jerry Case, another co-worker, who had also been ordered to submit to a random drug screen. Mr. Case informed Plaintiff that he had been waiting for more than 2 hours to be tested.
8. Plaintiff signed in with the receptionist and waited approximately 2 hours before he was tested. Upon completing his drug test, Plaintiff returned to work to complete his fueling assignments for the day. Plaintiff completed his work assignment at 6:00 p.m., signed his time card, and reported working 13 hours on June 2, 2003.
9. Plaintiff `s job involves the transportation of hazardous fuel. There are federal and state laws governing the number of hours an employee may work per day transporting fuel, but Plaintiff had not exceeded those hours. However, Defendant-Employer had issued a directive to supervisors advising them to try to keep employee work hours to no more than 10 hours per day, unless approved. Plaintiff had not been approved to work more than 10 hours.
10. On June 3, 2003, Mr. Hoyle contacted Plaintiff about his time card to discuss the 13 hours he worked the prior day. Plaintiff informed Mr. Hoyle that the drug test took more than 2 hours to complete. Mr. Hoyle was of the opinion that Plaintiff had violated a direct order of his superior and that his excuse was not justified. Mr. Hoyle informed Plaintiff he would be terminated if one more incident of that nature occurred.
11. On June 4, 2003, after Plaintiff completed his fueling assignments and while re-fueling his fuel truck, Mr. Hoyle drove up to the fuel island near Plaintiff. Plaintiff approached the passenger window of Mr. Hoyle's vehicle, placed his elbows on the passenger door and leaned into the window to discuss the circumstances surrounding the drug test and the number of hours he worked on June 2, 2003. Mr. Hoyle abruptly terminated the conversation with Plaintiff, and pulled off while Plaintiff was leaning into the passenger window.
12. The force of the abrupt acceleration thrust Plaintiff backwards, causing him to lose his balance and twist his back. Plaintiff did not fall. Based on the greater weight of the evidence, Mr. Hoyle had no willful intent to injure Plaintiff when he suddenly drove off.
13. Another employee, Michael Jackson, was in the immediate vicinity and Plaintiff told Mr. Jackson that Mr. Hoyle pulled off while he was leaning into the window and that he had twisted his back. Mr. Jackson testified that Plaintiff was upset with Mr. Hoyle and said he was going to whip Mr. Hoyle's behind. He advised Plaintiff to sit in the truck and calm down.
14. Plaintiff testified that he walked across the shop yard to Mr. Hoyle's office to inform him that his back had been injured as a result of Mr. Hoyle's sudden acceleration while he was leaning into the vehicle. Plaintiff further testified that when he entered Mr. Hoyle's office, Mr. Hoyle began reprimanding him again for working more than 13 hours. Plaintiff testified that Mr. Hoyle assaulted him by poking him in the chest and forcing him into the back of a file cabinet, causing his back to hurt. Mr. Hoyle testified that Plaintiff assaulted him. A fight ensued. There were no witnesses at the time the fight began. Robert Tart came upon the fight while it was in progress and testified that he saw Plaintiff striking Mr. Hoyle repeatedly while Mr. Hoyle sat slumped in his chair. Plaintiff did not file a claim for injury due to the fight.
15. On June 4, 2003, Plaintiff sustained an injury by accident, arising out of and in the course of his employment when he twisted his back as a result of his supervisor abruptly driving off while he was leaning into the vehicle.
16. Mr. Hoyle swore out a warrant against Plaintiff for assault. Defendant-Employer subsequently terminated Plaintiff under the company's progressive discipline policy. Mr. Hoyle was not terminated. Plaintiff never attempted to return to work for Defendant-Employer after June 4, 2003.
17. Plaintiff was subsequently found not guilty of assaulting Mr. Hoyle in a criminal trial.
18. Plaintiff was subsequently awarded $10,118 in past due unemployment compensation.
19. Plaintiff has searched for work since his June 4, 2003 termination, but has not returned to suitable employment. Based on the greater weight of the evidence, Plaintiff's injury of June 4, 2003, did not prevent him from working, or finding suitable employment.
20. Dr. China Goli treated Plaintiff on June 10, 2003, for back pain. Dr. Goli's medical notes indicate Plaintiff reported that he fell and hurt his back when the person he was talking to while leaning on the car, drove off suddenly. The evidence establishes that Plaintiff did not fall when Mr. Hoyle abruptly pulled off. Dr. Goli prescribed medication and gave Plaintiff a follow-up appointment in two weeks. At his June 24, 2003 appointment, Dr. Goli prescribed physical therapy due to Plaintiff's subjective complaints of back pain. By July 8, 2003, Plaintiff reported that his back pain was much improved, but he still had back pain. Physical therapy was continued for two to three more weeks. Plaintiff returned to Dr. Goli on August 12, 2003, and reported that he developed sharp, low back pain three days earlier. Due to his sharp, low back pain Plaintiff came in for treatment a week earlier than his scheduled appointment. Dr. Goli ordered an MRI on October 7, 2003. The lumbar MRI showed mild degenerative disc disease with mild annular disc bulges at L4-L5 and L5-S1. The thoracic MRI showed no focal disc herniation or canal stenosis.
21. Plaintiff testified that he sustained a prior back injury while in the course and scope of his employment with Defendant-Employer on March 17, 2003, and was treated by Dr. Joan Potter until he reached maximum medical improvement on April 4, 2003. Plaintiff did not file a workers' compensation claim for that injury.
22. Plaintiff's previous claim for an injury to his back while working for the North Carolina Department of Correction was admitted and compensation was paid.
23. No expert medical testimony was presented and there is insufficient medical evidence from which to determine whether Plaintiff suffered any disability from the incident on June 4, 2003. Dr. Goli did not remove Plaintiff from work.
24. Plaintiff's testimony that he experienced back pain due to twisting his back when Mr. Hoyle suddenly drove off is found to be credible. Plaintiff's testimony that he sought treatment from Dr. Goli due to back pain arising from the injury is also found to be credible. However, any discomfort or pain Plaintiff may have experienced was temporary and had "much improved" by July 8, 2003. Dr. Goli's continuation of physical therapy for two to three more weeks after July 8, 2003, appeared to be in response to Plaintiff's complaint that he still had some pain. There is insufficient evidence from which to find that Plaintiff's pain resulting from the June 4, 2003 incident lasted beyond the end of July 2003. Also, there is insufficient evidence to causally relate the sharp, low back pain Plaintiff reported to Dr. Goli on August 12, 2003, to the June 4, 2003 injury. Plaintiff's objective testing thereafter only showed mild degenerative disc disease
25. Plaintiff's termination from employment was justified under Defendant-Employer's policy. Other employees would likely be terminated for similar conduct. Plaintiff has not proven that his failure to find suitable employment after his termination was caused by his June 4, 2003 injury.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Finding of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 4, 2003, Plaintiff sustained an injury by accident, arising out of and in the course of his employment with Defendant-Employer when he twisted his back due to his supervisor's sudden driving off while Plaintiff was leaning into the window of the vehicle. N.C. Gen. Stat. § 97-2(6).
2. The treatment Plaintiff received from Dr. Goli from June 10, 2003 through the end of July 2003 was causally related to his June 4, 2003 injury by accident. Expert medical testimony is not needed to establish a causal nexus between Plaintiff's immediate pain from twisting his back and the need for medical treatment. However, considering Plaintiff's pre-existing back condition and the absence of expert medical opinion testimony; there is insufficient evidence from which to find that the sharp, low back pain Plaintiff reported to Dr. Goli on August 12, 2003 and the treatment he received thereafter was related to his June 4, 2003 injury. N.C. Gen. Stat. §§ 97-2(9), 97-25; Click v. PilotFreight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
3. Plaintiff has failed to prove that his June 4, 2003 injury was disabling. Dr. Goli did not take Plaintiff out work. There is insufficient evidence from which to find and conclude that plaintiff's failure to find suitable work was caused by his June 4, 2003 injury. Plaintiff has the burden of proving disability.Cummins v. BCCI Construction Enterprises, 149 N.C. App. 180,185; 560 S.E.2d. 369, 373 (2002).
 * * * * * * * * * * *
As a result of the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for indemnity compensation is denied.
2. Defendants shall pay for the medical treatment Plaintiff received from Dr. Goli from June 10, 2003 through the end of July 2003 when bills for such treatment have been approved according to procedures adopted by the Commission.
3. Defendants shall pay the costs.
This the __ day of July 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER